UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDER MOSKOVITS,<br><br>                Plaintiff,<br><br>-against-<br><br>FEDERAL REPUBLIC OF BRAZIL; STATE OF SANTA CATERINA, BRAZIL; CELESC OF SANTA CATARINA, BRAZIL; STATE OF MARANHAO, BRAZIL; STATE OF MATO GROSSO, BRAZIL; RAIMUNDO COLOMBO; JORGE SIEGA; DOES 1 THROUGH 10,<br><br>                Defendants. | 21-CV-4309 (LTS)<br><br>ORDER OF DISMISSAL |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff brings this *pro se* action, for which the filing fees have been paid, asserting claims of unjust enrichment and *quantum meruit* and, in the alternative, breach of contract or quasi-contract" For the reasons set forth below, the complaint is dismissed for lack of subject matter jurisdiction.

**STANDARD OF REVIEW**

The Court has the authority to dismiss a complaint, even when the plaintiff has paid the filing fee, if it determines that the action is frivolous, *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (*per curiam*) (citing *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995) (*per curiam*) (holding that Court of Appeals has inherent authority to dismiss frivolous appeal)), or that the Court lacks subject matter jurisdiction, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest

[claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

## BACKGROUND

Plaintiff Alexander Moskovits is a dual citizen of the United States and Brazil who resides in Brazil. Plaintiff filed this complaint against the Federal Republic of Brazil; the State of Santa Caterina, Brazil; the State of Maranhao, Brazil; the State of Mato Grosso, Brazil (collectively the "sub-sovereign states"); Raimundo Colombo, a former governor of Santa Caterina; CELESC of Santa Catarina;[1] and Jorge Siega, a citizen of Brazil. (ECF 1 ¶¶ 9-15.) The business deal giving rise to this complaint has been the subject of prior litigation brought by Plaintiff in state and federal court. The Court will set forth this litigation history to the extent necessary to address this new complaint.

On December 26, 2018, Plaintiff filed a *pro se* complaint in New York Supreme Court, New York County, against the Republic of Brazil; the sub-sovereign states; Calvin Grigsby, a citizen of California; Bank of America N.A. (BoA); and Colombo and Siega, who are citizens of Brazil. *See Moskovits v Grigsby*, Ind. No. 650617/2019 (Sup. Ct. N.Y. Cnty.).[2] As in this complaint, the state court complaint alleged claims of unjust enrichment, *quantum meruit,* and breach of contract, and sought $7 million in compensatory damages and additional punitive damages. As evidence of the existence of a contract, the complaint referred extensively to a

---

[1] CELESC is the state-owned electric utility in Santa Catarina. *See Moskovits v Grigsby*, No. 650617/2019, 2020 WL 6704176, at *1 (Sup. Ct., N.Y. Cnty., Nov. 12, 2020).

[2] On the same day, Plaintiff filed a *pro se* complaint in this District in connection with the same underlying events. *See Moskovits v. Grigsby*, No. 18-CV-12281 (CM) (S.D.N.Y. Apr. 3, 2019) (dismissing complaint without prejudice because Plaintiff did not pay the relevant fees after his application for leave to proceed *in forma pauperis* was denied).

series of e-mails between Plaintiff and defendant Grigsby from February 2011 through January 2013.

On May 6, 2019, the Republic of Brazil removed the state court action to this District under 28 U.S.C. § 1441(d). *See Moskovits v. Grigsby,* No. 19-CV-3991 (VSB) (*Moskovits I*). Plaintiff voluntarily dismissed the Republic of Brazil and the sub-sovereign states from the action, leaving as defendants Grigsby, BoA, Siega, and Colombo. Through counsel, Plaintiff moved to remand the matter to the state court for lack of subject matter jurisdiction. In an affidavit submitted in *Moskovits I*, Plaintiff asserted that his "domicile is in his native Brazil, where he [has lived] with his spouse and two minor daughters for years." (*Id.*, ECF 12-1 ¶ 3.)

In an order granting Plaintiff's motion to remand in *Moskovits I*, Judge Broderick summarized the allegations in Plaintiff's state court complaint as follows.

> On February 18, 2011, Defendant Grigsby contacted Plaintiff Moskovits to discuss potential business opportunities relating to oil in Brazil. (Compl. ¶¶ 18–20.) Moskovits provided Grigsby with a loan structure which would allow Grigsby and BoA to secure credit for sub-sovereign state transactions guaranteed by the Brazilian Government, and provided Grigsby with potential clients for such transactions. (Compl. ¶¶ 21–29.) For Moskovits's work, Grigsby promised compensation, valued at 35% of 1% of the transaction value for a transaction value over $500 million, or 35% of 2% for a transaction value under $500 million. (Compl. ¶¶ 33, 53– 54.) The parties frequently corresponded about the potential transactions by email. Between August 1 and 3, 2011, Grigsby traveled to Brazil to meet with the potential borrowers. (Compl. ¶ 44.) Moskovits arranged for meetings with public officials and representatives of the public. These meetings were attended by, among others, Grigsby, Moskovits, and Siega. (Compl. ¶¶ 45–46.)
>
> In the weeks following Grigsby's visit, Moskovits continued to work on the deal, including offering to deliver the Memorandum of Understanding from Grigsby to CELESC, the state-owned electric utility in Santa Catarina. (Compl. ¶ 55.) However, Grigsby became confrontational in his responses, and evaded signing any compensation agreement with Moskovits. (Compl. ¶¶ 59–62, 64–65, 67, 71– 72). Grigsby also warned Moskovits against contacting CELESC, and cut off Moskovits's @grigsbyinc email address. (Compl. ¶¶ 59.) Moskovits attempted to discuss the potential CELESC deal, valued at $400 million, with Siega, who denied any knowledge of the deal, despite his presence at the meetings and his presence on many of the emails between Grigsby and Moskovits discussing the

3

> deal. (Compl. ¶ 57.) Moskovits alleges that he was purposefully cut out of the deal.
>
> Bank of America and the State of Santa Catarina signed a $726 million credit agreement on December 27, 2012, allegedly using Moskovits's finance structure. (Compl. ¶ 73.) Moskovits further alleges that three deals totaling $1.9 billion were consummated by Grigsby and BoA, using his financial structure. (Compl. ¶¶ 92–93.) To date, Moskovits has not received any compensation in relation to these deals.

(ECF 1:19-CV-3991, 58 at 3-4.)

Judge Broderick determined that remand was appropriate for the following reasons:

> Although Federal courts have original jurisdiction over state law claims pursuant to 28 U.S.C. § 1332(a) where a dispute is between citizens of different states and the amount in controversy exceeds $75,000, see 28 U.S.C. § 1332(a), "[courts] do not have diversity jurisdiction over cases between aliens." *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012). Specifically, "where on one side [of a litigation] there are citizens and aliens and on the opposite side there are only aliens" a federal court lacks jurisdiction. *Id*. (internal quotation marks omitted). This is the exact circumstance presented here. Plaintiff is a citizen of Brazil, and Defendants are citizens of North Carolina, California, and Brazil. Therefore, on Defendants' side there are both citizens and aliens, and on Plaintiff's side there is only an alien. Accordingly, this court lacks subject matter jurisdiction under diversity of citizenship to decide the state court claims alleged.

(*Id.* at 7.)

On remand, the state court dismissed Plaintiff's claims against Grigsby and BoA on the merits, and dismissed the claims against Siega and Colombo "without prejudice to an action in Brazil or another forum, if appropriate." *Moskovits*, No. 650617/2019, 2020 WL 6704176, at *9. The state court matter may be on appeal.[3]

---

[3] The state court judge ordered the sealing of all documents except for the parties to the case and the court. Plaintiff unsuccessfully appealed the sealing order. *See Moskovits v. Grigsby*, No. 3229, 2020 WL 6733586 (1st Dep't Nov. 17, 2020). Plaintiff also filed a complaint in this District alleging that the sealing order violated his First Amendment rights and other federally protected rights. That complaint was dismissed for failure to state a claim and on immunity grounds. *See Moskovits v. Grigsby*, 20-CV-10537 (LLS) (S.D.N.Y. Mar. 12, 2021), *appeal pending,* 21-886 (2d Cir.)

In this new complaint, Plaintiff names the entities that he voluntarily dismissed from the state court matter — Brazil and the sub-sovereign states — in addition to CELESC, Colombo, and Siega. Plaintiff identifies himself as a dual citizen of the United States and Brazil, and renews his claims of unjust enrichment and *quantum meruit* arising out of the same events at issue in the state court matter. (ECF 1 ¶ 9.) He relies on the same series of emails from 2011 to 2013 to show Defendants' reliance on his work product and the existence of an agreement to compensate him. (*Id.* at 8-55.) Plaintiff asserts:

> The contracts between BOA and the three Brazilian sub-sovereign states, all guaranteed by BRAZIL, expressly provided that any disputes arising from the financial transactions were to be resolved under New York law. See e.g., Exhibit B ($726 Million agreement executed by BOA, State of Santa Catarina, and BRAZIL) at p.26, ¶13.09 (New York law governs disputes).

(*Id.*, ¶ 8.)

Also attached is an unexecuted agreement between Plaintiff, Grigsby, and Siega. (*Id.*, Exh. E at 70-78.) Plaintiff acknowledges that the Foreign Sovereign Immunities Act provides the exclusive basis for jurisdiction over foreign states in federal and state courts, but he suggest that the commercial activity exception applies to the events giving rise to this complaint. *See* 28 U.S.C. § 1605(a)(2) (*Id.* at 44.)

## DISCUSSION

**A.    Subject Matter Jurisdiction**

The subject-matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, a federal district court only has subject-matter jurisdiction to consider a "federal question" (federal-question jurisdiction) or claims under state law in diversity (diversity jurisdiction). But "'it is common ground that in our federal system of limited jurisdiction any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.'" *United*

*Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983)); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative . . . .").

    1.    Diversity Jurisdiction

Plaintiff does not specifically invoke the Court's diversity jurisdiction under 28 U.S.C. § 1332, but he asserts that New York law governs any dispute arising between the parties. (ECF 1 ¶ 8.) "A party seeking diversity jurisdiction bears the burden of establishing that diversity exists." *Braten v. Kaplan* 406 F. App'x 516, 517 (2d Cir. 2011). Diversity of citizenship is present when the action is between "citizens of a State and citizens or subjects of a foreign state," 28 U.S.C. § 1332(a)(2), or between "citizens of different States and in which citizens or subjects of a foreign state are additional parties," *id.* § 1332(a)(3);[4] *see Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998); *France v. Thermo Funding Co., LLC*, 989 F. Supp. 2d 287, 293 (S.D.N.Y. 2013) (discussing "alienage diversity").

"Diversity is lacking within the meaning of these sections where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens." *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 127 (2d Cir. 2020) (citing *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002)); *see also*

---

[4] Plaintiff must also allege to a "reasonable probability" that the claim is in excess of the sum or value of $75,000.00, the statutory jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted). The Court accepts Plaintiff's assertion that the amount in controversy meets the jurisdictional statutory amount.

*Franceskin v. Credit Suisse*, 214 F.3d 253, 257 (2d Cir. 2000) ("[F]ederal courts lack subject matter jurisdiction over state law claims among aliens."); *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir. 1980) ("The fact that alien parties were present on both sides would destroy complete diversity").

Plaintiff argued that *Moskovits I* should be remanded to the state court because subject matter jurisdiction was lacking. Judge Broderick agreed, having determined that, "on Defendants' side there are both citizens and aliens, and on Plaintiff's side there is only an alien." (ECF 1:19-CV-3991, 58 at 7.) Plaintiff's status as a dual citizen was apparently not made clear in *Moskovits I*. In this complaint, however, Plaintiff asserts that he is a dual citizen of the United States and Brazil who is domiciled in Brazil.[5]

When a person is a dual citizen, it is the American citizenship that governs the issue of diversity jurisdiction. *See Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 507 (2d Cir. 1991) ("In matters of diversity jurisdiction American citizenship will determine diversity."); *Fuerst v. Fuerst,* 832 F. Supp. 2d 210, 217 (E.D.N.Y. 2011) ("Although Wolfgang is a citizen of both Germany and the United States, it is the general consensus among the courts — including the Second Circuit — that, where a party has dual citizenship, '[i]n matters of diversity jurisdiction American citizenship will determine diversity.'") (quoting *Action S.A,* 951 F.2d at 508)). But to be a citizen of a state within the meaning of the diversity statute, "a natural person must be both a citizen of the United States *and* be domiciled within [a] state." *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 828 (1989); *Fuerst,* 832 F. Supp. 2d at 217–18 (holding that the dual

---

[5] Plaintiff has consistently alleged that he is domiciled in Brazil. *See Moskovits*, No. 20-CV-10537 (LLS) 2021 WL 230193, at *1 ("Plaintiff Moskovits [is] a resident of Brazil"); *Moskovits*, No. 19-CV-3991 (VSB), 2020 WL 3057754, at *1 (same); *Moskovits*, No. 650617/2019, 2020 WL 6704176, at *1 (same).

7

national had to be domiciled in a state in the United States in order for diversity jurisdiction to apply); *Lemos v. Pateras,* 5 F. Supp. 2d 165, 165 (S.D.N.Y. Apr. 23, 1998) ("For purposes of diversity jurisdiction, one is a citizen of the state where one is domiciled.").

A United States citizen domiciled abroad is not considered either a citizen of any state within the United States, or a citizen or subject of a foreign state. *See Raymond Loubier Irrevocable Trust v. Loubier*, 858 F.3d 719, 722 (2d Cir. 2017) (quoting *Herrick Co., Inc. v. SCS Commc'ns, Inc.,* 251 F.3d 315, 322 (2d Cir. 2001)). Thus, if a United States citizen is domiciled abroad at the time he commences an action, section 1332(a) does not provide a district court with diversity jurisdiction of the suit. *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990) ("Though we are unclear as to Congress's rationale for not granting United States citizens domiciled abroad rights parallel to those it accords to foreign nationals, the language of § 1332(a) is specific and requires the conclusion that a suit by or against United States citizens domiciled abroad may not be premised on diversity); *France*, 989 F. Supp. 2d at 293 (same); *see also* 1 *Moore's Federal Practice* ¶ 0.74[4] (1990); 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3621, at 577-78 (1984).

Here, Plaintiff asserts that he is a dual citizen of the United States and Brazil, and that he is domiciled in Brazil. Plaintiff's status as a United States citizen domiciled outside of the country deprives the Court of diversity jurisdiction over this action.

2.   Federal Question Jurisdiction

To invoke federal question jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under federal law if the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730, 734-35 (2d Cir. 2007) (quoting

*Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006)). Mere invocation of federal jurisdiction, without any facts supporting a federal law claim, does not create federal subject matter jurisdiction. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188-89 (2d Cir. 1996).

Plaintiff does not invoke any federal law, and the allegations in the complaint do not suggest that Plaintiff can state a claim arising under federal law. The Court therefore does not have federal question jurisdiction over this action.

## CONCLUSION

Plaintiff's complaint, for which the filing fee has been paid, is dismissed for lack of subject matter jurisdiction. The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated: June 14, 2021
New York, New York

                                            /s/ Laura Taylor Swain
                                            LAURA TAYLOR SWAIN
                                            Chief United States District Judge